## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF PUERTO RICO

HECTOR MEDINA SANCHEZ,
WANDA GARCIA CARAMBOT, and
the Conjugal Partnership Existing
Between Them,
  Plaintiffs,

v.

WESTERN AUTO OF PUERTO RICO;
WESTERN AUTO SUPPLY
COMPANY,
  Defendants.

Civil No. 97-1921 (HL)



### OPINION AND ORDER

This litigation arises out of Plaintiff Héctor Medina Sanchez' ("Medina")

termination from his job as Store Manager by Defendant Western Auto of Puerto Rico

("Western Auto"). Medina alleges that he was terminated on the basis of disability, in

violation of the Americans with Disabilities Act, 42 U.S.C.A. 12101 et seq. (West

1995) ("ADA"). Medina has also invoked this Court's supplemental jurisdiction to

bring claims under Puerto Rico's Law 44, P.R. LAWS ANN. tit. 1, § 501 (1982); Law

80, P.R. LAWS ANN. tit. 29, § 185 (1995); and Article 1802, P.R. LAWS ANN. tit.

31, § 5141 (1990).

Before the Court are Defendant's Motion for Summary Judgment, Dkt. No. 15,

Plaintiff's Motion in Opposition to Defendant's Motion for Summary Judgment, Dkt.

No. 20, and Defendant's Reply to Plaintiff's Opposition, Dkt. No. 27.



Civil No. 97-1921 (HL)

Medina began working for Western Auto in April of 1976 as a stock person. By August of 1986, Medina had ascended to the position of Assistant Manager and in May of 1993 became a Store Manager. On December 23, 1994, while on the job, Medina sustained a back injury. Medina returned to work in April of 1995, but his doctors recommended that he avoid lifting heavy objects.

Medina remained in his position as Store Manager until his discharge. Medina claims that he was discharged in May of 1996, while Western Auto claims that it was May of 1997. The date of Medina's discharge is not material, as the parties have not made the date an issue. The reason for Medina's discharge is at issue, however.

Medina claims that he was discharged in violation of the ADA because of his back injury and the limitations that it imposed on him. Western Auto claims that it did not discriminate against Medina and that Medina was discharged because he violated company policy by receiving free automotive services from a co-worker on company property. Western Auto further argues that Medina was not an otherwise qualified individual with a disability under the ADA. For the reasons set forth below, the Court grants Western Auto's motion for summary judgment.

### Standard for Summary Judgment

The Court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

2

Civil No. 97-1921 (HL)

the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A

fact is material only if it "might affect the outcome of the suit under the governing

law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining if a

material fact is "genuine," the Court does not weigh the facts but, instead, ascertains

whether "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Id.*; *Leary v. Dalton*, 58 F.3d 748, 751 (1st Cir. 1995).

Once a party moves for summary judgment, it bears the initial burden.

Specifically, "a party seeking summary judgment always bears the initial

responsibility of informing the district court of the basis for its motion, and identifying

those portions of the [evidence] . . . which it believes demonstrate the absence of a

genuine issue of material fact." *Crawford-El*, 118 S.Ct. 1584, 1598 n. 22 (1998)

(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once this threshold is met, the burden shifts to the nonmoving party.  The

nonmovant may not rest on mere conclusory allegations or wholesale denials. Fed. R.

Civ. P. 56(e); *Libertad v. Welch*, 53 F.3d 428, 435 (1st Cir. 1995).  Instead, the

nonmoving party must "set forth specific facts showing that there is a genuine issue

for trial." Fed. R. Civ. P. 56(e).  Further, the nonmovant "must do more than simply

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.

Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Of course, the Court draws inferences and evaluates facts "in the light most

3

Civil No. 97-1921 (HL)

favorable to the nonmoving party." *Leary*, 58 F.3d at 751 (1986). Still, even in

discrimination cases, summary judgment is appropriate where the nonmoving party

rests entirely upon "conclusory allegations, improbable inferences, and unsupported

speculation" on any essential element of the discrimination claim. *Medina-Muñoz v.*

*R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

### Western Auto's Initial Burden

Having moved for summary judgment, Western Auto bears the burden of

articulating exactly where lies a lack of a genuine issue of material fact. Western

Auto carries this burden by arguing first that Medina has failed to present evidence

sufficient to allow a reasonable factfinder to conclude that Medina was capable of

performing, with or without reasonable accommodation, the essential functions of the

Store Manager position.

Western Auto also argues that Medina has failed to produce sufficient evidence

to create a genuine issue of material fact that his termination was pretextual and

instead motivated by discriminatory intent. Thus, Medina must now shoulder the

burden of pointing out any genuine issues of material fact.

### Medina's Direct Evidence of Discrimination

In proving a case of discrimination under the ADA, a plaintiff has two options.

He can present either direct evidence of discrimination or circumstantial evidence of

discrimination. In the absence of direct evidence of discrimination, a plaintiff must

4

Civil No. 97-1921 (HL)

rely on circumstantial evidence. *Laurin v. Providence Hosp.*, 150 F.3d 52, 58 (1ˢᵗ Cir. 1998).

Here, Medina offers no direct evidence of discrimination by Western Auto. Direct evidence is evidence "which, in and of itself, shows a discriminatory animus." *Mandavilli v. Maldonado*, 38 F.Supp.2d 180, 192-93 (D.P.R. 1999) (quoting *Jackson v. Harvard University*, 900 F.2d 464, 467 (1ˢᵗ Cir. 1990)). Further, "direct evidence consists only of the most blatant remarks, whose intent could be nothing other than to discriminate." *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1081 (11ᵗʰ Cir. 1990).

Medina's purported direct evidence of discrimination here amounts to nothing more than a couple of isolated comments, the worst of which is, although puerile, certainly not demonstrative of discriminatory intent. The worst of these innocuous comments was the District Manager's telling Medina that he was "big, fat, and strong, but yet so messed up." Plaintiff's Statement of Contested Facts at 2. Absent direct evidence of discrimination, Medina must use circumstantial evidence.

### Medina's Prima Facie Case

A plaintiff who attempts to prove a case of discrimination by circumstantial evidence must rely on the burden-shifting model from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), to structure his case. *Laurin*, 150 F.3d at 58.

The *McDonnell Douglas* burden-shifting methodology requires first that a

Civil No. 97-1921 (HL)

plaintiff prove a prima facie case of discrimination.  *Laurin*, 150 F.3d at 58; *E.E.O.C.*

*v. Amego, Inc.*, 110 F.3d 135, 141 (1ˢᵗ Cir. 1997); *Jacques v. Clean-Up Group, Inc.*,

96 F.3d 506, 511 (1ˢᵗ Cir. 1996); *Katz v. City Metal Co., Inc.*, 87 F.3d 26, 30 n. 2 (1ˢᵗ

Cir. 1996).  Exactly how to prove a prima facie case of discrimination under the ADA

continues to be unclear, though.  Some courts have articulated a three-part prima facie

case, while others have set forth a four-part analysis that more closely mirrors the

original *McDonnell Douglas* paradigm.

Even among the decisions of the First Circuit Court of Appeals, there is some

variation in how the prima facie case is presented.[1]  For example, in *Laurin v.*

*Providence Hosp.*, the court used the three-part formulation of the plaintiff's prima

facie case.  The court explained that the plaintiff "was required to demonstrate a prima

facie case on all three essential elements of her claim, . . . (1) 'disability,' (2)

'qualification,' and (3) causation."  150 F.3d at 58.

On the other hand, in numerous other cases, the First Circuit has suggested that

---

[1]

In some cases, the First Circuit has used the three-part prima facie case, under which a plaintiff must show first that he was disabled within the meaning of the ADA.  Second, he must show that with or without reasonable accommodation he was able to perform the essential functions of his job.  Third, he must show that the employer discharged him in whole or in part because of his disability.  See, e.g., *Laurin*, 150 F.3d at 56.

In other cases, the First Circuit has used the four-part prima facie case, under which a plaintiff must prove first that he was disabled within the meaning of the ADA.  Second, he must show that with or without reasonable accommodation he was qualified to perform the essential functions of the job.  Third, he must show that he "was subject to an adverse employment action by a company subject to the [ADA]."  Fourth, he must show that he "was replaced by a non-disabled person or was treated less favorably than non-disabled employees."  See, e.g., *Jacques v. Clean-Up Group, Inc.*, 96 F.3d 506, 511 (1ˢᵗ Cir. 1996).

6

Civil No. 97-1921 (HL)

the precise *McDonnell Douglas* four-part structure is the appropriate method of

making out a prima facie case of discrimination under the ADA. For example, in *Katz*

*v. City Metal Co., Inc.*, 87 F.3d at 30, the court set out the three-part structure as the

appropriate means of proving discrimination outright by *direct* evidence. In contrast,

the court said, "[a] plaintiff may indirectly prove that he was discriminated against

because of a disability by using the *prima facie* case and burden shifting methods that

originated in *McDonnell Douglas* . . . ." *Id.* n. 2.

In *Jacques v. Clean-Up Group, Inc.*, the First Circuit again said that satisfying

the three-part test proves a claim of discrimination:

> To establish a claim of disability discrimination under the ADA, a
> plaintiff must prove three things by a preponderance of the evidence:
> First, that he [or she] was disabled within the meaning of the Act.
> Second, that with or without reasonable accommodation he [or she] was
> able to perform the essential functions of [the] job. And, third, that the
> employer discharged him [or her] in whole or in part because of his [or
> her] disability.

96 F.3d 506, 511 (1st Cir. 1996). The court went on to say that "[a] plaintiff may also

indirectly prove his or her case 'by using the *prima facie* case and burden shifting

methods that originated in *McDonnell Douglas Corp. v. Green* . . . .'" *Id.* (citing

*Katz*, 87 F.3d at 30, n. 2). Several other recent First Circuit decisions stand for the

same proposition. See *Tardie v. Rehabilitation Hosp. of Rhode Island*, 168 F.3d 538,

541 (1st Cir. 1999); *Feliciano v. State of R.I.*, 160 F.3d 780, 784 (1st Cir. 1998);

*Amego*, 110 F.3d at 141 n. 2.

7

Civil No. 97-1921 (HL)

Decisions from other Circuit Courts also vary between the two formulations. See, e.g., *Taylor v. Phoenixville School District*, 184 F.3d 296, 306 (3rd Cir. 1999) (using the three-part prima facie case); *Greer v. Emerson Electric Co.*, --F.3d--, 1999 WL 587973, 3 (8th Cir. 1999) (using the three-part prima facie case); *Chapman v. AI Transport*, 180 F.3d 1244, 1251 (11th Cir. 1999) (using the three-part prima facie case); *Hardy v. S.F. Phosphates Ltd. Co.*, --F.3d--1999, WL 401722, 7 n. 2 (10th Cir. 1999) (using the three-part prima facie case); *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) (using the three-part prima facie case); *DeLuca v. Winer Industries, Inc.*, 53 F.3d 793, 797 (7th Cir. 1995) (using the four-part prima facie case).

This conflict regarding how to make out a prima facie case of discrimination under the ADA is more apparent than real. The purpose of a prima facie case is simply to provide enough circumstantial evidence of discrimination "to create an inference that an employment decision was [the result of discrimination]. *Leffel v. Valley Financial Services*, 113 F.3d 787, 792 (7th Cir. 1997). One way of creating this inference is to show that "persons not disabled or perceived to be disabled were treated more favorably than the plaintiff," as the four-part *McDonnell Douglas* methodology prescribes. *Id.* at 793. This showing "should not be understood as the only means of doing so, however." *Id.* at 794. In fact, "[a]ll that is necessary is that there be evidence reasonably suggesting that the employer would not have taken

8

Civil No. 97-1921 (HL)

adverse action against the plaintiff had she not been disabled . . . ." *Id.* Thus, the

three-part method of making out a prima facie case of discrimination on the basis of

disability is really only a different means of achieving the same end. Consequently, a

plaintiff may use either method.

Medina presents his prima facie case in the four-part *McDonnell Douglas*

form. Thus, Medina must demonstrate that he has presented sufficient evidence to

create a genuine issue of material fact on each of the components of the prima facie

case. The four-part test requires that a plaintiff prove first that he was disabled within

the meaning of the ADA. Second, he must show that with or without reasonable

accommodation he was qualified to perform the essential functions of the job. Third,

he must show that he "was subject to an adverse employment action by a company

subject to the [ADA]." Fourth, he must show that he "was replaced by a non-disabled

person or was treated less favorably than non-disabled employees." See, e.g.,

*Jacques*, 96 F.3d at 511.

### *1. Disability*

For purposes of summary judgment, Western Auto concedes that Medina was

at the time of his termination disabled within the meaning of the ADA. Defendant's

Motion Requesting Summary Judgment at 15.

### *2. Qualification*

Medina has narrowly managed to create a genuine issue of material fact as to

9

Civil No. 97-1921 (HL)

his ability to perform the essential functions of a Store Manager at Western Auto.

Medina and Western Auto disagree first as to which job description properly applied

to Medina, that of Store Manager or that of Service Manager.[2] This disagreement

creates an issue as to what were the essential functions of Medina's job. If Medina

was a Service Manager, then there would be a genuine issue as to Medina's ability to

perform the essential functions of his job. This is in part because the job description

for the Service Manager position does not mention explicitly any physical

requirements. Dkt. No. 20, exhibit 2. Further, Medina claims that performing

physical tasks required only about five percent of his time at work. Plaintiff's

Statement of Contested Facts at 3.

In contrast, if Medina was a Store Manager, as his title suggests, Medina has

failed to provide sufficient evidence to allow a rational factfinder to conclude that

Medina could perform his essential duties. The job description for the Store Manager

position lists a number of physical requirements, all of which are plainly essential to

the job. Dkt. No. 20, exhibit 2. This is true regardless of how many hours each day

Medina claims his physical tasks require.

Of course, a job description is only one means of determining what are a job's

essential functions. See 42 U.S.C.A. § 12111(8) (West 1995). Job descriptions are

---

[2]

Although Medina's title was Store Manager, Medina contends that he was primarily assigned
to the service area of the store, making the Service Manager job description applicable to him.

10

Civil No. 97-1921 (HL)

not controlling on this issue. See *Laurin*, 150 F.3d at 59, n. 5; see also, 29 C.F.R. §

1630.2(n) (1998). The controversy over which job description properly applied to

Medina is sufficient here, though, to create a genuine issue of material fact as to

Medina's qualification for his job at Western Auto. Still, even if the Service Manager

description applied to Medina, he would have to overcome at trial Western Auto's

substantial evidence that Medina's essential functions included significant and

frequent physical exertion.

### 3.-4. *Adverse Employment Action by a Covered Entity and Replacement by a Non-disabled Person*

There is no question that Western Auto's termination was an adverse

employment action. Further, the parties do not contest that Western Auto is a

company that is subject to the ADA. Finally, Western Auto admits that Medina's

position was filled by a person who has no disabilities of which Western Auto is

aware. Defendant's Answer at 4.

### Western Auto's Burden of Production

As Medina has successfully made out a prima facie case of discrimination, the

next step in the *McDonnell Douglas* burden-shifting structure places the onus on

Western Auto. Western Auto must at this stage "articulate a nondiscriminatory reason

for its adverse employment actions." *Laurin*, 150 F.3d at 58 (quoting *Dichner v.*

*Liberty Travel*, 141 F.3d 24, 30 (1st Cir. 1998)). Still, "[t]his entails only a burden of

Civil No. 97-1921 (HL)

*production*, not a burden of *persuasion*; the task of proving discrimination remains the plaintiff's at all times." *Id.* (emphasis in original).

At this stage, Western Auto's burden is light. See *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 38 (1st Cir. 1995). Carrying the burden of merely *producing* evidence of a nondiscriminatory reason for Medina's termination requires nothing more than offering such a reason. Western Auto has successfully carried its burden. According to Western Auto, "Medina violated company policy forbidding employees to render services offered by the company in store grounds and for which the company does not benefit." Defendant's Motion Requesting Summary Judgment at 24.

Plaintiff violated this policy, according to Western Auto, when he had a fellow employee, José Bonilla ("Bonilla"), perform a brake repair job on his car free of charge on store premises. Defendant's Motion Requesting Summary Judgment at 24. The relevant company policy reads as follows:

> [a]ny violation to any of the following rules will result in immediate dismissal: offering or carrying out sales of articles, products or services equal to or similar to the ones offered and sold by the company within the company's premises and from which the company does not benefit.

Plaintiff's Statement of Contested Facts, Exhibit 1.

Because of this violation, Medina was terminated. Defendant's Motion Requesting Summary Judgment at 24. Thus, Western Auto has met its burden of production regarding setting forth a legitimate, nondiscriminatory reason for Medina's

12

Civil No. 97-1921 (HL)

termination.

### Medina's Burden of Proving Both Pretext and Discrimination

Western Auto's production of a nondiscriminatory reason for Medina's

termination places the burden back onto Medina to prove both pretext and

discrimination. Upon the emergence of a nondiscriminatory reason,

> the inference [of discrimination] raised by the prima facie case
> dissolves, and the plaintiff is required to show, unaided by the original
> inference of discrimination, that the employer's proffered reason is a
> pretext for discrimination . . . . [Plaintiff] must muster proof that enables
> a factfinder rationally to conclude that the stated reason behind the
> adverse employment decision is not only a sham, but a sham intended to
> cover up the proscribed type of discrimination.

*Laurin*, 150 F.3d at 58 (quoting *Dichner v. Liberty Travel*, 141 F.3d 24, 30 (1st Cir.

1998).

### *1. Pretext*

Medina presents substantial evidence that Western Auto's articulated reason

for Medina's dismissal was merely a pretext. Medina's evidence is sufficient to

create an issue of material fact on the question of pretext.

Western Auto maintains that Medina's participation in a lunch-hour brake

repair on his private vehicle was the reason for Medina's dismissal. Medina, on the

other hand, presents evidence that, when viewed in the light most favorable to

Medina, casts doubt on Western Auto's reason. Neither party contests the language of

the company policy upon which Medina's dismissal was purported to be based. That

Civil No. 97-1921 (HL)

language, though, requires "offering or carrying out sales of articles, products or services." Plaintiff's Statement of Contested Facts, Exhibit 1. The Court interprets this as requiring "offering sales" or "carrying out sales." Western Auto does not contest that Bonilla, who performed the service, did so free of charge. Plaintiff's Statement of Contested Facts at 7. Thus, the company policy's literal terms and its focus on preventing employees from engaging in competing *business* pursuits were not implicated by Medina's actions.

The same company policy also requires that the forbidden activities occur "within the company's premises." Plaintiff's Statement of Contested Facts at 7. Here, again, Medina presents substantial evidence that the brake job was performed away from company premises. Medina contends that the parking space in which he and Bonilla performed the brake job belonged to an office at the shopping center, not to Western Auto. Plaintiff's Statement of Contested Facts at 7. Medina's evidence is clearly sufficient at least to create a genuine issue of material fact as to whether Medina's activities even violated company policy. Accordingly, Western Auto's reliance on Medina's alleged violation to justify Medina's dismissal is subject to doubt. Medina has successfully created a genuine issue of material fact on the question of whether Western Auto's articulated reason was merely a pretext.

## 2. *Discrimination*

Medina, to avoid summary judgment, must go beyond merely presenting

14

Civil No. 97-1921 (HL)

evidence of pretext. Medina must show that Western Auto used a pretextual reason to hide discriminatory animus as the real reason for Medina's termination. See *Laurin*, 150 F.3d at 58. This stage requires Medina to adduce evidence on what is really the ultimate question in this litigation: whether Medina's termination was the result of Western Auto's intent to discriminate on the basis of disability. See *Conward v. Cambridge School*, 171 F.3d 12, 20 (1st Cir. 1999). Medina simply fails to present sufficient evidence to create a genuine issue of material fact on this question.

Even taken in the light most favorable to Medina, Medina's items of evidence of discriminatory intent range from unconvincing at best to irrelevant at worst. Medina points to several comments made by his superiors as evidence of their intent to discriminate against him on the basis of his disability. First, Medina contends that Regional Manager Jesús Toledo asked Medina to consider a non-managerial position on "two or three" occasions because of Medina's difficulty in performing the physical tasks that Store Managers perform. Plaintiff's Statement of Contested Facts at 1. Second, Medina points to a comment by District Manager Juan Mercado in which Mercado said to Medina that Medina was "big, fat, and strong, but yet so messed up." Plaintiff's Statement of Contested Facts at 2.

These isolated comments fail even to approach evidence of discriminatory animus. Even if these statements could be reasonably construed as discriminatory, though, "isolated or ambiguous remarks, tending to suggest animus . . ., are

15

Civil No. 97-1921 (HL)

insufficient, standing alone, to prove an employer's discriminatory intent." *Speen v. Crown Clothing Corp.*, 102 F.3d 625, 636 (1ª Cir. 1996) (interpreting state age discrimination law and quoting *Blare v. Husky Injection Molding Sys.*, 419 Mass. 437, 646 N.E.2d 111, 118, n. 9 (1995)). See also *Lehman v. Prudential Ins. Co. of Am.*, 74 F.3d 323, 329 (1ª Cir. 1996) (holding that isolated remarks are insufficient to prove discriminatory intent); *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 314 (6ᵗʰ Cir. 1989) (holding that isolated remarks are insufficient to prove discriminatory intent).

As further evidence of discriminatory intent, Medina points to several other events. First, Medina received a "needs improvement" work evaluation for a period before his termination. Plaintiff's Statement of Contested Facts, Exhibit 4. In this evaluation, the appraiser cited Medina's "personal health problems" as a cause of Medina's missing work on several occasions and not concentrating on his managerial duties. *Id*. Medina further points out that the appraiser, Antonio Soto, was not Medina's direct supervisor. Plaintiff's Statement of Contested Facts at 6. Again, the Court fails to see how this evaluation reflects discriminatory intent on the part of Western Auto.

Medina further contends that Medina's immediate supervisor during the period for which Medina received a "needs improvement" evaluation, Carlos Vázquez, received a promotion for the same period. Plaintiff's Statement of Contested Facts at

16

Civil No. 97-1921 (HL)

6. This happened in spite of the "team effort" mentality that prevailed at Western Auto. *Id.* This fact alone is certainly not indicative of discriminatory animus against Medina. This is true even leaving aside Western Auto's contention that Vázquez' promotion was the result of the evaluation period previous to the one at issue. Defendant's Reply at 23. Western Auto also contends that Vázquez was working at another store during the relevant period. Defendant's Reply, Exhibit IV. Medina does not dispute this. Finally, Western Auto maintains that Carmelo Espinoza was actually Medina's immediate supervisor during the relevant period, a period for which Mr. Espinoza too received a "needs improvement" evaluation. Again, Medina does not dispute this.

As further evidence of Western Auto's discriminatory intent, Medina points to the "unexplained" fifteen-day delay between Medina's brake job and the commencement of the investigation of the matter. Plaintiff's Statement of Contested Facts at 8. Again, this delay is no better explained by discriminatory animus than by organizational inefficiency.

Finally, Medina points out that in response to the brake job event, Bonilla was not suspended, while Medina was terminated. While this may seem incongruous, it is certainly not evidence of discrimination on the basis of disability by Western Auto. This is true even without reference to the evidence offered by Western Auto, in which Western Auto's Human Resource Manager, Víctor Maldonado, explained this

17

Civil No. 97-1921 (HL)

incongruity. Mr. Maldonado explained that a manager is expected to adhere to rules more strictly than is a low-level employee, as a manager sets an example for his subordinates. Plaintiff's Statement of Contested Facts, Exhibit 1. As logic requires, for unequal treatment to give rise to an inference of discrimination, similarly situated persons must be involved. For them "[t]o be 'similarly situated' . . ., the two individuals . . . must be similar 'in all relevant aspects.'" *Cardona Jimenez v. Bancomercio*, 174 F.3d 36, 42 (1ˢᵗ Cir. 1999) (quoting *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1ˢᵗ Cir. 1989)). In the words of the First Circuit, "[r]easonableness is the touchstone: while plaintiff's case and the comparison cases that he advances need not be perfect replicas, they must closely resemble one another in respect to relevant facts and circumstances." *Conward*, 171 F.3d at 20. Medina and Bonilla were not similarly situated employees.

Medina's evidence thus fails to demonstrate the existence of a genuine issue of material fact as to whether Medina's termination was motivated by disability-based discriminatory animus. At most, this evidence shows that Medina's termination was arbitrary and capricious. The ADA, however, does not prohibit employers from making arbitrary and capricious employment decisions. A plaintiff is not entitled to relief even if he has been discharged unfairly or by an irrational decision maker, unless the discharge was motivated by discriminatory animus. *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 16 (1ˢᵗ Cir. 1994) (interpreting Title VII). See also

Civil No. 97-1921 (HL)

*Hidalgo v. Overseas Condado Ins. Agencies, Inc.* 120 F.3d 328 (1ˢᵗ Cir. 1997)

(interpreting ADEA); *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526 (1ˢᵗ Cir. 1996)

(interpreting Title VII).

Apart from offering these items of evidence of discrimination, Medina also

alleges that Western Auto denied Medina reasonable accommodation for his

disability.  Such a denial constitutes prohibited discrimination under the ADA.  42

U.S.C. § 12112(b)(5)(A) (West 1995).

Medina maintains that while he was fully capable of performing all of his

essential functions, he requested and was denied reasonable accommodation with

respect to his "marginal physical duties."  Plaintiff's Motion in Opposition to Motion

Requesting Summary Judgment at 20.  Since Medina has successfully created an issue

of material fact regarding whether his physical duties are essential functions, the

Court will treat Medina's physical duties as non-essential for purposes of treating the

reasonable accommodation question.

The burden of showing the existence of a reasonable accommodation rests on

Medina.  *Feliciano*, 160 F.3d at 786.  According to Medina, a reasonable

accommodation would have "consisted in restructuring his job in such a way that his

marginal physical duties were significantly reduced or eliminated."  Plaintiff's Motion

in Opposition to Motion Requesting Summary Judgment at 20.

Normally, the inquiry into whether an accommodation is indeed reasonable is

AO 72A
(Rev 8/82)

Civil No. 97-1921 (HL)

complex and fact intensive. Western Auto has obviated this inquiry by

accommodating Medina's disability. Western Auto's actions in accommodating

Medina's disability render moot Medina's arguments regarding what would have been

a reasonable accommodation.

Medina asserts in his Statement of Contested Facts that Western Auto failed to

accommodate Medina's disability. Plaintiff's Statement of Contested Facts at 2.

Medina further alleges that Western Auto informed Medina "that he had to do

physical work, and that if he felt pain, he could ask for help." *Id.* This, along with an

allegation that Medina was never "relieved" of any of his physical tasks, is Medina's

evidence of Western Auto's failure to provide reasonable accommodation. *Id.*

The problem with these allegations is that they are either unsupported or

contradicted by Medina's evidence. For the proposition that Medina "had to do

physical work," Medina cites Plaintiff's Statement of Contested Facts, Exhibit 3,

Deposition of Héctor Medina. In fact, in that deposition, Medina testified contrary to

the allegation that he was forced to do physical work. Medina testified that he only

did the physical tasks of which he was capable, while asking others to help with the

rest of the physical tasks. Plaintiff's Statement of Contested Facts, Exhibit 3. In fact,

Medina was even asked,

> Was there ever a point in time in which, or was there ever a situation
> where you could not get something done, there was no one else to do it
> under your supervision, you called [your supervisor] Espinosa [sic] to
> see if you could get help to do it and he said, "No, do it yourself?"

Civil No. 97-1921 (HL)

*Id.*

Medina's response was simply, "No. I must say no." *Id.*

As for Medina's allegation that Medina was never "relieved" of any of his physical tasks, Medina fails to explain what this means. Apparently, Medina is referring to Western Auto's never having formally eliminated physical tasks from Medina's potential array of responsibilities. Again, Medina fails to explain what difference this makes for the issue of reasonable accommodation. As long as Medina admits that Western Auto always provided adequate assistance with the tasks that presented problems for Medina, Medina's understanding of his permanent, formal role has no bearing on the reasonable accommodation issue.

In sum, the Court finds that Medina has failed to present evidence sufficient to create a genuine issue of material fact with respect to whether Western Auto denied Medina reasonable accommodation. Because of this, together with Medina's failure to create a genuine issue of material fact on the issue of discrimination, Defendant's Motion Requesting Summary Judgment, Dkt. No. 15, is granted, and Medina's ADA claim is dismissed with prejudice.

### Medina's Local Law Claims

Lastly, Medina also brings a number of claims under Puerto Rico law, including the local provision which is parallel to the ADA. The assertion of supplemental jurisdiction over state law claims is within a federal court's discretion.

Civil No. 97-1921 (HL)

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). If federal law claims are dismissed before trial, however, the state law claims should also be dismissed. *Id.* at 726; *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990); *Soto v. Carrasquillo*, 878 F.Supp. 324, 332 (D.P.R. 1995), *aff'd sub nom. Soto v. Flores*, 103 F.3d 1056 (1st Cir. 1997). Because the Court has dismissed Medina's ADA claim, the Court hereby dismisses without prejudice his Puerto Rico law claims under Law 44, P.R. LAWS ANN. tit. 1, § 501 (1982); Law 80, P.R. LAWS ANN. tit. 29, § 185 (1995); and Article 1802, P.R. LAWS ANN. tit. 31, § 5141 (1990).

**It Is So Ordered,**
At San Juan, Puerto Rico
September 29, 1999

HECTOR M. LAFFITTE
Chief United States District Judge

22